Good morning. Good morning. Kara Hartzler, Federal Defenders, on behalf of Mr. Calderon. At Mr. Calderon's trial, the district court failed to conduct the third step in the Batson test to determine whether the prosecutor's strike of the only African-American juror was racially motivated. So the court may remand for the district court to conduct this step, or it may rely on compelling evidence in the record to conclude that the prosecutor's reasons were pretextual. The district court also erred in denying Mr. Calderon's challenge to his underlying removal orders, since he had plausible claim to withdrawal relief and adjustment of status. Thus, the court should remand to dismiss the indictment or to provide Mr. Calderon a new trial. The first step I'd like to get into is the third step of the Batson test. Now, as we've argued in our brief, the district court just completely failed to conduct this step. And the court's case law is very clear, that this is not something we have to ask for. This is something that a district court has to automatically proceed to do. So what happened here is the district court just said, those are racially neutral reasons. The prosecutor gave us several reasons, and then the district court acknowledged. Don't you have here in the ninth a series of cases where the ultimate ruling of the court can suffice to constitute a ruling on the third step? I'm sorry, could you... Yes, I mean, if we were in court, I'd have the court reporter read the record back, the question back to you, but we're not. So I said, don't you have here in the ninth circuit cases that say that the court's ultimate ruling on the request can suffice to constitute a ruling on the third step? So for instance, if the court agrees that... I'm sorry, are you going to ask me another question, or are you going to answer mine? I'm sorry. Just checking, because your procedure may be different here in the ninth. My understanding, Your Honor, is that essentially... The question is, are there cases in the ninth to that effect? I'm not aware of those cases, if there are, but my understanding is that at a minimum, the district court needs to explain its reasons under the third step of Batson, and here that wasn't done. We can review De Novo on that issue and examine the record ourselves. That's absolutely right. And so if you want to address this issue with your argument time, can you explain why, or what in the record shows that these reasons were pretextual? Certainly. Our best argument, and I think a really clear example, is the fact that the prosecutor said, one of the things that I'm looking towards is, did any of these jurors serve on a jury and not reach a verdict? And that was one of the reasons that the prosecutor struck juror number seven. But if you look back at the record, there were multiple times, at least three times, where the jurors said, yes, I served on a jury, and then the prosecutor didn't proceed to ask, was there a verdict? In fact, juror 21, if you look at that record, juror 21 said, I served on a jury on a border crossing offense, the offense that is most like the offense here, and yet the prosecutor didn't proceed to ever ask juror 21 whether they reached a verdict in that case. So the very reason that the prosecutor is given as to what the prosecutor was looking for wasn't played out in the prosecutor's interactions with the other jurors. So I think that's a very clear example. So there were two jurors who said, I sat on a jury, and we were unable to reach a verdict, and the prosecution struck both of them. That's right. So your quibble is that, well, there were other jurors who did serve on a jury, but we don't know whether they reached a verdict or not. Or at least one other juror that you pointed out, juror number 21. That's right. But another thing that I would point out, Your Honor, is, for instance, one of the things that the government has raised in its brief is they said, well, the government only had six strikes. How were they supposed to strike everyone that there was supposedly reasons that they could have struck them for? But if you look at the fact that the government struck, it would be juror number five. And basically, juror number five said that that juror reached a verdict in two civil cases. And that juror, as far as we can tell, didn't raise any of the other concerns the prosecutor either expressed or didn't express. There was nothing about that juror that seemed to raise any prosecution concerns. And yet, the government struck that juror, rather than she didn't even ask if there was a verdict reached in the most similar type of case. Well, but basically, Mitchell is requiring the district court to make a meaningful evaluation of the issue, right? Correct. And here, we don't have a rubber stamp situation where the court says, well, for the reasons asserted by the prosecution, I'm going to rule as such. He obviously went through a meaningful process to come to his conclusion. And it seems to me you're quibbling not with the nature of, with any kind of bias or rubber stamping, but you're just quibbling with the manner in which the district court dealt with step three. I may be wrong, so disabuse me, please. I think the best example about why we think that the district court didn't do what it needed to do can be seen in the court's decision in Alvarez-Ulloa. And there, you had a situation where the district court said the exact same thing. The district court said, I believe that these are racially neutral reasons. And in fact, the district court in Alvarez-Ulloa actually went much further and discussed some of those reasons. Here, the district court didn't do anything even close to that. So it's just, it's not possible that there was an error in Alvarez-Ulloa, and there was an error here. Now, I don't recall, and looking at the record exactly, to pinpoint like what the sequence of the peremptory exercise was, but you seem to focus a lot on the jurors with some experience that the government didn't ask about the verdict. And the government struck one, juror number 30, and the defense struck the other two. So 21 actually didn't end up serving on the jury. Am I correct in that? That's correct. That's my understanding. Yes, Your Honor. So I think, but we don't necessarily look at who ended up on the jury. We look at what were the strikes that the prosecutor exercised. And in this case, there was just no reason for the prosecutor not to, at a minimum, ask. Another example I would give, Your Honor, is, for instance, the, one of the things the prosecutor cited was the border patrol, former border patrol father. And the prosecutor said, well, it just seemed like there was something there, and I didn't feel comfortable about it. But what this Court's case law has said that if the juror, which the juror in this case said, no, that's not going to be a problem. If there was actually a problem, then the prosecutor had a responsibility to actually inquire further, and she didn't. So for those reasons, Your Honor, we believe that the prosecutor just hasn't shown, or we have shown, I would say, that there were just some very illogical steps that the prosecutor took. And when there's illogical steps, and there's no good reason for it, that's when we find purposeful discrimination. Do you want to save a little bit of time? We will save our time. Thank you, Your Honor. Hello. May it please the Court, Benjamin Hawley for the United States. The District Court did reach the third step, and regardless, both at the trial level and here, Mr. Calderon has not proven, has not met his burden of showing purposeful discrimination. First, the Court found the exact words were, the Court finds those are neutral reasons not based upon race, and the Batson Challenge is denied. That's different than the situations in both Alanis and Alvarez-Iloa that the defense has discussed. In Alanis, the Court said that the reasons given by the prosecutor were plausible. And in Alvarez-Iloa, the Court said that they were facially, that those reasons are facially neutral. In both of those cases, that's essentially saying the prosecutor has met the second step. The prosecutor has given facially neutral plausible grounds, but then did not get to the third step. Here, in contrast, the Court found those are neutral reasons, a factual finding, those are neutral, not based on race. Had the Court thought those reasons were pretextual, had the Court not believed the prosecutor, found the prosecutor to be not credible, it could not have and the video and the discovery request and why that wasn't preserved in light of the fairly broad request that counsel asked for initially. Is that not a practice of preserving these things in your district? There is, if it's related to the case. And here, there was no reason to believe that order videos were related to the case, that Mr. Calderon was observed on video at all. In fact, their request, specifically, this is at page 855 of the record, requested dispatcher other tapes or physical evidence which relate to the arrest. Here, the agents on the ground were never in communication with the video operators, and the video operators testified they were never in communication, never saw Mr. Calderon on video, were never in communication with the agents on the ground, except for one said, when he heard that they were following footprints, were tracking or were scanning. That is, they'll start looking for, to see if they see anybody. There were no further radio calls. All of this comes down to this call about dark spots. And the district court specifically found that dark spots call had nothing to do with Mr. Calderon. It was five miles away, as one of the agents testified. This was a 15-mile stretch of border. There are multiple calls, multiple events going on all at the same time. And so the agents had no reason to believe that that, they said it wasn't for them. They had no reason to believe that Mr. Calderon was on video. That's why it was not preserved. So it's different than, for example, in Zaragoza, where everyone agreed the defendant was on either supported or dispelled the defense's theory. Here, there is no agreement about that because there's no indication that Mr. Calderon, who was found about two miles inside the border, was on camera at all. So as it turned out, at the time of trial, the agents testified that the dark spots really weren't referring to this particular incident. But at the time the request was made, the government didn't have any way of knowing that. Did you? They did in the sense that, again, no one had any reason to believe that Mr. Calderon was on any video. The only, the evidence that the defense pointed to of maybe he was, was that dark spots call. Absent that, and in our view because it wasn't related, there's no indication he was on video. What would happen is if the video operators observed him, they would put out a call, you know, I have eyes on, and then direct the agents to go left, go right. That's not what happened. This 30 minutes before they even find the footprints, there's that one reference to dark spots, which the court found had to do with some trucks in a different area. And the agents on the ground are following these footprints for two miles into the border. So they had no reason to believe that these cameras were here. Because the cameras, to be clear, do not cover, there are a lot of cameras, but they don't cover every inch of border. So for example, in this particular area, I believe there are about three cameras, and they swivel and they can zoom in so that you can track somebody if you see someone. But it's not that every inch of that border is on camera, or even if it was, the agents are able to watch all of those screens and see anybody who crosses the border. We wish it were that way, but unfortunately the technology is not there. So the practice is you check the cameras, and then if they show a particular defendant arrestee, then you preserve that. If not, then you don't. Right. Or if we have reason to believe that maybe they would be on there, then we should be preserving it. And here we didn't. There was no reason to believe that he was on that border. He was able to get a few miles into the United States by walking, so he would have been on camera, if he were on camera at all, for quite a long time if they were able to track him. There's just no indication that was true. To turn to the question I had asked earlier, are there cases here in the Ninth in which the court has affirmed a Batson challenge where there has not been a formal third step resolution, but instead determined to be, have been dealt with by the court in its ultimate ruling and its explanation of the ultimate ruling? In its explanation, so for example in Alanis, they say... So the answer is yes or no? I don't believe so, or not quite as the court has phrased the question. Okay, that's what I wanted to know. Right. So for example in Alanis, they say what is necessary is the district court make a deliberate decision whether purposeful discrimination occurred. So then it just becomes a question of whatever explanation the district court gave, was that a deliberate decision? Well that was specifically the case I was thinking of, is Alanis, and I think you see as well, or it was my impression from reading those cases that in fact the court is not requiring some strict formalistic... Right, there are no magic words. That's right, and that's my question. And so yes, in that case, this court looks at what did the district court say, what were the circumstances, did it make them... And was there an adequate facial explanation of the decision? Correct. So is it your position then that step three was complied with in this informal manner? Correct, that when the court said these are not based on race, that necessarily requires the court finding there is no purposeful discrimination. You can't make that finding and believe that there's purposeful discrimination or vice versa. All right. Unless the court has any further questions? I don't, Judge Noonan. Thank you. Thank you. I'd just like to go, Judge Lucero, briefly to your question about... That's good. You can see it's sincerely meant, and I mean to be flip in my earlier conversation with you. I understand. What I would ask for at a minimum, if for instance the court says, well, as long  as there's a standard of review, then we can go with that. I think the difficulty there then comes with the standard of review. Because if you have a district court and you believe that they have reached the third Batson step, but they haven't explained it on the record, then you really have no way of saying, well, do we review this for clear error or de novo because we don't know if the reasons were good enough. So if the court decides, as you're suggesting, we would allege that at a minimum the review then needs to be de novo because we don't have enough here to go on the record. The other thing that I would just like to address briefly is the issue of the video that Your Honor brought up. I think this goes to a broader problem in the Southern District, which is that it has always been the policy of the government to only have these videos for 30 days. We've never had an explanation for this. I've had at least three cases where we've argued, why aren't these videos being preserved longer? We're on the border. Official restraint is a defense we raise all the time, and yet the government has never given us a satisfactory explanation for why these can't be preserved. If this were an issue, as we point out in a brief, of, well, we're using VHS videotapes and there's no room for it, that might be one thing. But this is electronic recording. Remind us, here you made the request within that 30-day period? Absolutely. Yes, we did. And the other thing that I would just respond to in government counsel's statement of, do you check the videos? Do you check the cameras to see if there's anything on them? I've never seen any evidence of that. And I'm not saying that opposing counsel is not being truthful. I'm just saying that in our experience, it's just a fact that after 30 days, they're recycled. And I've never heard of a situation where they've actually been checked prior to that. The other thing is that because... Yes, that's why I wanted the government to address it. The issue that's presented here, we have to deal with the facts that we have in determining whether there was an indication that he was under constant surveillance. So we can only deal with what's before us. But I take your point that official restraint is an issue that should pop up repeatedly at the border. And as to whether the government should change its practice and preserve it so that the defense is in a position to independently assess the videos, I think that's something that the head of your office and the U.S. Attorney needs to get together and really discuss as to whether there's a good reason why it's logistically difficult for the government to preserve it beyond the 30 days, which is their practice. And I see the AUSA is nodding his head. I'm sure it'll get conveyed to the office down there. Absolutely. If I could just make one response to that. At a minimum, I think that goes to the issue of the jury instruction and the quality of the government's conduct. Because they're still doing this practice. There's no good reason for it. And at a minimum, we should have gotten a jury instruction. Thank you. Thank you very much.
judges: Noonan, Lucero, Nguyen